## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**CHRISTOPHER F.,**[1]

   **Plaintiff,**

           **Case No. 1:21-cv-516**
 **v.**          **Magistrate Judge Norah McCann King**

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

   **Defendant.**

### <u>OPINION AND ORDER</u>

   This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Christopher F. for Child Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 402 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.* Plaintiff appeals from the final decision of the Acting Commissioner of Social Security denying Plaintiff's application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Acting Commissioner's decision.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.
[2] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

# I.    PROCEDURAL HISTORY

Plaintiff protectively filed applications for supplemental security income and child insurance benefits on December 21, 2018, and December 29, 2018, respectively, alleging in both applications that he has been disabled since an alleged disability onset date of December 7, 1994. R. 56−57, 115−16, 179−83, 187−90.[3] The applications were denied initially and upon reconsideration. R. 121−26, 128−33. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 134. Administrative Law Judge ("ALJ") Nancy Lisewski held a hearing on June 2, 2020, at which Plaintiff, who was represented by counsel, appeared and testified, as did a vocational expert. R. 31−51. In a decision dated June 12, 2020, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from December 7, 1994, the alleged disability onset date, through the date of that decision. R. 15−25; *see also id.* at 24−25 (finding specifically that, as to the claim for child's insurance benefits, Plaintiff was not disabled prior to the date on which he attained age 22 and, as to the claim for supplemental security income, Plaintiff is not disabled). That decision became the final decision of the Commissioner

---

[3] Child's insurance benefits are payable to a child "of an individual entitled to old-age or disability insurance benefits, or of an individual who dies a fully or currently insured individual" under certain circumstances. 42 U.S.C. § 402(d)(1)(B). The applicable regulation further explains that an applicant is entitled to such child's benefits if:

> (1) You are the insured person's child, based upon a relationship described in §§ 404.355 through 404.359;
> (2) You are dependent on the insured, as defined in §§ 404.360 through 404.365;
> (3) You apply;
> (4) You are unmarried; and
> (5) You are under age 18; you are 18 years old or older and have a disability that began before you became 22 years old; or you are 18 years or older and qualify for benefits as a full-time student as described in § 404.367.

20 C.F.R. § 404.350(a). In the present case, Plaintiff, although now an adult, R. 23, 56−57, sought, *inter alia*, child's insurance benefits on the earnings record of his father, Charles E. Fields, Jr., an insured person who is entitled to benefits. R. 186, 189−90.

of Social Security when the Appeals Council declined review on November 24, 2020. R. 1–6.

Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On May 24, 2021,

Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to

28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 10.[4] On the

same day, the case was reassigned to the undersigned. ECF No. 11. The matter is ripe for

disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

Cir. 2000); *see also* 42 U.S.C. §§ 405(g) & 1383(c)(3). The United States Supreme Court has

explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative
> record and asks whether it contains sufficien[t] evidence to support the agency's
> factual determinations. And whatever the meaning of substantial in other contexts,
> the threshold for such evidentiary sufficiency is not high. Substantial evidence, this
> Court has said, is more than a mere scintilla. It means – and means only – such
> relevant evidence as a reasonable mind might accept as adequate to support a
> conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks

omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal

quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009)

---

[4]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases
seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot
Project (D.N.J. Apr. 2, 2018).

(citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of*

*Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although the ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

### B.    Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Bruner v. Astrue*, No. 4:11-CV-1359, 2012 WL 5398635, at *4 (M.D. Pa. Nov. 5, 2012) ("In determining whether an applicant for adult child disability benefits and SSI benefits satisfies the definition of disability, the five-step sequential evaluation process outlined in 20 C.F.R. § 404.1520(a)(4) is used."). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be

disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff alleges disability from the time of his birth. R. 23. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between that date and the date of the decision. *Id*.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: gastrointestinal impairments, insomnia, depression, and Asperger's syndrome. *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 18–20.

At step four, the ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels subject to certain non-exertional limitations. R. 20. The ALJ also noted that Plaintiff had no past relevant work. R. 23.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs–*e.g.,* approximately 200,000 jobs as a commercial cleaner; approximately 30,000 jobs as a salvage laborer; approximately 50,000 jobs as a laundry aide, hospital–existed in the national economy and could be performed by Plaintiff. R. 24. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from Plaintiff's alleged disability onset date through the date of that decision. R. 24–25 (finding specifically that, as to child's insurance benefits, Plaintiff was not disabled prior to the date on which he attained age 22 and, as to supplemental security income, Plaintiff is not disabled).

Plaintiff disagrees with the ALJ's findings at steps four and five, and also challenges the constitutionality of the appointment of the Acting Commissioner of Social Security. He asks that

the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Memorandum of Law,* ECF No. 15; *Plaintiff's Reply Brief*, ECF No. 17. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 16.

## IV.   DISCUSSION

### A.    RFC, Mental Impairments, and Opinion Evidence

Plaintiff argues that substantial evidence does not support the ALJ's RFC determination because the ALJ failed to properly evaluate his mental impairments and the opinion evidence. *Plaintiff's Memorandum of Law*, ECF No. 15, pp. 9–21; *Plaintiff's Reply Brief*, ECF No. 17, pp. 1–6. Plaintiff specifically argues that the ALJ failed to consider Plaintiff's anxiety at step two when she failed to conduct a proper psychiatric review technique ("PRT") and failed again at step three to consider his anxiety.[5] *Id.*

Plaintiff's arguments are not well taken. It is true that the ALJ did not expressly consider Plaintiff's anxiety at step two when identifying Plaintiff's severe impairments, nor did she consider anxiety at step three when finding that Plaintiff did not meet or equal a listed impairment. R. 18–20.[6] However, the ALJ did not deny benefits at either of those steps of the

---

[5] Plaintiff does not argue that he met or medically equaled a specific listed impairment at step three; rather, he simply contends that the ALJ erred in considering the criteria for paragraph B related to his mental impairments. *Plaintiff's Memorandum of Law*, ECF No. 15, pp. 14–15; *Plaintiff's Reply Brief*, ECF No. 17, p. 1.

[6] As previously noted, the ALJ found at step two that Plaintiff had the following severe impairments: gastrointestinal impairments, insomnia, depression, and Asperger's Syndrome, R.

sequential evaluation; rather, the ALJ continued with the sequential analysis. R. 20−24. Thus, any alleged deficiency at those steps was rendered harmless in this case. *See Hicks v. Colvin*, No. 2:15-cv-07221, 2016 WL 8674251, at *8 (D.N.J. Oct. 14, 2016) ("Even if the ALJ had in fact erred with respect to one of the impairments that she found to be non-severe, such error would be harmless since she found other impairments to be severe, engaged in the full five-step evaluation, and accounted for related possible limitations in her RFC finding."); *Auriemma v. Colvin*, No. 13-5947, 2015 WL 5097902, at *6 (D.N.J. Aug. 31, 2015) (citing *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) ("Because the ALJ found in [Plaintiff]'s favor at Step Two, even if he had erroneously concluded that some of h[is] other impairments were non-severe, any error was harmless."); *cf. Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 209 (3d Cir. 2019) ("[N]o incantations are required at steps four and five simply because a particular finding has been made at steps two and three. Those portions of the disability analysis serve distinct purposes and may be expressed in different ways.").

Notably, the ALJ explained at step three that

> [t]he limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

R. 19. As set forth in more detail below, the ALJ specifically considered Plaintiff's anxiety at step four when fashioning the RFC. R. 20−22.

_____

18, and, at step three, the ALJ gave specific consideration to Listings 12.04, 12.06, 12.10, and 12.11, R. 18−20.

A claimant's RFC is the most that the claimant can do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). At the administrative hearing stage, it is the ALJ who is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ must assess "the nature and extent" of a claimant's mental and/or physical limitations "and then determine [that claimant's RFC] for work activity on a regular and continuing basis." 20 C.F.R. §§ 404.1545(b), (c), 416.945(b), (c); *see also* SSR 96-8p ("A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."). The ALJ also must consider all the evidence. *Plummer*, 186 F.3d at 429. However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In the case presently before the Court, the ALJ determined that Plaintiff had the RFC to perform "a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to simple and routine tasks, no interaction with the public, and only occasional interaction with coworkers and supervisors[.]" R. 20. In reaching this determination, the ALJ specifically considered, *inter alia*, Plaintiff's anxiety:

The claimant has a history of depression and *anxiety* (Ex. 6F, pp. 28, 33). The record includes periods of increased symptoms, especially in 2011 when he was suffering from gastrointestinal problems that increased his *anxiety* (Ex. 5F). However, treatment improved his symptoms, his depression was eventually controlled and the claimant noted no functional difficulties (Ex. 6F, p. 28). Nonetheless, the claimant continued to show depressed mood, diminished interest or pleasure, but denied other symptoms such as fatigue (Id.). He also showed continued *anxiety* and fearfulness, but denied loss of appetite, difficulty concentrating, racing thoughts or suicidal ideation (Id. at p. 34). He was continued with psychiatric medications, advised to be compliant with medications, advised to increase activity and to get proper sleep (Id. at p. 33).

R. 20−21 (emphasis added).

In addition, treatment notes from Dr. Michelle Festa in 2011, noted that the claimant was doing well but *anxiety* increased when he returned to school in the fall of 2011 (Ex. 5F, p. 83). Noted *anxiety symptoms* included vomiting and diarrhea, which limited his ability to attend school (Id.). He was placed on home schooling to deal with problems with attendance due to his condition (Id.). Notes from 2011 also cite to increasing *anxiety attacks*, fatigue, difficulty concentrating, irritability, nausea, diarrhea, and cramping (Ex. 5F, pp. 107-09). The claimant was treated for H.Pylori and treatment showed improvement in his condition (Id. at p. 124). *Anxiety symptoms* were noted to improve with treatment of his gastrointestinal condition as well (Id.). In addition, the claimant was treated for insomnia in 2017, noting worsening symptoms, but the insomnia was linked to side effects from psychiatric medications (Ex. 6F, p. 28).

More recent treatment notes show that the claimant was doing well in 2016, 2017, 2018, 2019, citing that *anxiety* and depression were controlled and stable, and the claimant was interested in going back to school for computer science (Ex. 7F, pp. 2, 12, 19, 22, 23; Ex. 11F, p. 5; Ex. 13F, pp. 4, 5). He also showed normal mental status exams throughout this period (Id.). Furthermore, the claimant also noted improved Asperger's symptoms with medication treatment (Id.).

R. 22 (emphasis added); *see also id*. (noting further that Lewis Lazarus, Ph.D., noted during a consultative examination that, *inter alia*, Plaintiff had "a history of special education and increased difficulty in high school with anxiety, depression and gastrointestinal problems that required him to take online classes because he was missing a lot of school" but that Plaintiff was "well maintained on bupropion XL 150 mg., and was taking no other medications"). The ALJ went on to explain the RFC restrictions as follows:

12

> While the claimant alleges disability, the treatment notes submitted are conservative and routine in nature, and the claimant is maintained well with regular treatment. The record is also void of treating source opinions that support the level of limitations alleged, and the claimant showed the ability to perform a wide range of activities independently, including spending time online on his computer. As such, the record supports the range of unskilled work with social restrictions that is outlined in the above residual functional capacity.

R. 23. This record therefore reflects that the ALJ expressly considered Plaintiff's anxiety symptoms and whether there were any limitations flowing from this condition, finding, *inter alia*, that Plaintiff's anxiety symptoms had improved with treatment and that his anxiety was controlled and stable. R. 20–23. As previously discussed, an ALJ need include in the RFC only "credibly established" limitations. *Rutherford*, 399 F.3d at 554; *see also Grella v. Colvin*, No. 3:12-CV-02115-GBC, 2014 WL 4437640, at *18 (M.D. Pa. Sept. 9, 2014) ("[T]he ALJ cannot accommodate limitations which do not exist, or which cannot be found in the medical record. No specific functional limitations were provided by any of Plaintiff's medical sources with respect to her carpal tunnel syndrome[.]") (internal citation and quotation marks omitted). In the view of this Court, this record contains substantial evidence to support the ALJ's consideration of the effect of Plaintiff's anxiety on his ability to function and the ultimate RFC determination. *See id.*; *see also Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Plummer*, 186 F.3d at 429.

Plaintiff, however, contends that "one of the main limitations documented in the record due to the Plaintiff's anxiety is absenteeism" and that the ALJ did not mention absenteeism and failed to explain why absenteeism stemming from his anxiety was not included in the RFC. *Plaintiff's Reply Brief*, ECF No. 17, p. 1; *see also Plaintiff's Memorandum of Law*, ECF No. 15, pp. 15–16. Plaintiff goes on to argue that the ALJ's finding at step three that he had a moderate limitation in his ability to concentrate, persist, or maintain pace also supports Plaintiff's argument that the RFC does not sufficiently accommodate his anxiety, a condition that requires

time off-task and results in an inability to sustain an ordinary routine, absenteeism, and an inability to work on a "regular and continuing basis. *Plaintiff's Memorandum of Law*, ECF No. 15, pp. 15–16 (citing, *inter alia*, *Ramirez v. Barnhart*, 372 F.3d 546 (3d Cir. 2004), and POMS DI 34001.032); *Plaintiff's Reply Brief*, ECF No. 17, pp. 1–2 (citing, *inter alia*, POMS DI 34001.032).

Plaintiff's arguments are not well taken. As a preliminary matter, Plaintiff's reliance on *Ramirez* is unavailing to the extent that he contends that the limitation to simple and routine tasks does not adequately capture his mental impairments, *i.e.*, his moderate limitation in concentration, persistence, or pace. *Id.*  "[A]s long as the ALJ offers a 'valid explanation,' a 'simple tasks' limitation is permitted after a finding that a claimant has 'moderate' difficulties in 'concentration, persistence, or pace.'" *Hess*, 931 F.3d at 211 (explaining that this conclusion "flows directly from our decision in *Ramirez*"). In the present case, the ALJ's decision offers a "valid explanation" for the finding that a limitation to simple and routine tasks adequately accommodates a moderate limitation in concentration, persistence, or pace. Specifically, when fashioning the RFC, the ALJ expressly relied on, *inter alia*, record evidence that treatment improved Plaintiff's symptoms of anxiety, R. 20, 22; that denied difficulty concentrating or racing thoughts in 2017, R. 21; that Plaintiff's anxiety was controlled and stable, R. 22; that mental status exams were normal and included included coherent thought processes, full orientation and intact memory, *id.*; that Plaintiff was able to complete daily activities independently, *id.*; that Plaintiff was interested in returning to school for computer science, *id.*; that Plaintiff was able to spend time online on his computer, R. 23; and that treatment was conservative and routine, *id*. Based on this record, *Ramirez* does not require remand or otherwise undermine the RFC finding.

Likewise, Plaintiff's reliance on an alleged violation of the agency's Program Operations Manuel System ("POMS"), *Plaintiff's Memorandum of Law*, ECF No. 15, p. 16; *Plaintiff's Reply Brief*, ECF No. 17, p. 2, does not militate additional or different RFC limitations, nor does it otherwise require remand. Notably, "POMS . . . provisions do not aid [Plaintiff], however, because they lack the force of law and create no judicially-enforceable rights." *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 859 (3d Cir. 2007); *see also Burke v. Comm'r of Soc. Sec.*, No. CV 19-14148, 2020 WL 2989081, at *3 (D.N.J. June 4, 2020) ("[S]tatements in POMS do not have the force of law.").

In challenging the RFC determination, Plaintiff also contends that the ALJ erred in her consideration of the medical opinions of Susan Melzer, MSW, LCSW; Lewis Lazarus, Ph.D.; and Michelle Festa, M.D. *Plaintiff's Memorandum of Law*, ECF No. 15, pp. 16−21; *Plaintiff's Reply Brief*, ECF No. 17, pp. 3−6. For the reasons that follow, Plaintiff's arguments are not well taken.

An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id.* at 705–06; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case

law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[7] the regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. §§ 404.1527, 416.927 *with* 20 C.F.R. §§ 404.1520c(a), 416.927c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

The regulations emphasize that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at §§ 404.1520c(a), 416.920c(a). As to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her

---

[7] As previously noted, Plaintiff's claims were filed on December 21, 2018, and December 29, 2018.

medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1).  As to the consistency factor, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).

The applicable regulations further require the ALJ to articulate her "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id.* at §§ 404.1520c(b), 416.920c(b). "Specifically, the ALJ must explain how he [or she] considered the 'supportability' and 'consistency' factors for a medical source's opinion. . . . The ALJ may—but is not required to—explain how [she] considered the remaining factors." *Michelle K. v. Comm'r of Soc. Sec.*, No. 1:19-CV-01567, 2021 WL 1044262, at *4 (W.D.N.Y. Mar. 19, 2021) (citing 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)).

### 1.    Susan Melzer, MSW, LCSW

On May 18, 2020, Susan Melzer, MSW, LCSW, Plaintiff's treating provider, completed a five-page, check-the-box, and fill-in-the-blank form entitled, "Mental Residual Functional Capacity Questionnaire." R. 861–65. Ms. Melzer treated Plaintiff for Asperger's, depression, and social phobia. R. 861. Asked to describe Plaintiff's prognosis, she responded that, "[i]n the right environment with necessary education, Client could easily function if his job was at home and had minimal interactions with employees and bosses. Client desires to work but his Anxiety caused by aspergers [sic] and the education necessary are limiting my client from joining the

17

work force." *Id.* Ms. Melzer identified the following signs and symptoms of Plaintiff's impairments: "some" feelings of guilt or worthlessness; mood disturbance; difficulty thinking or concentrating; persistent disturbances of mood or affect; apprehensive expectation; seclusion or autistic thinking (avoids social interaction); persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; sleep disturbance; and decreased need for sleep. R. 862. Ms. Melzer rated Plaintiff's ability to do work-related activities on a day-to-day basis in a regular work setting, using the following scale: "unlimited or very good"; "limited but satisfactory"; "seriously limited, but not precluded," which means his means ability to function in this area is seriously limited and less than satisfactory, but not precluded in all circumstances; "unable to meet competitive standards," which means Plaintiff cannot satisfactorily perform this activity independently, appropriately, effectively and on a sustained basis in a regular work setting; and "no useful ability to function," which means an extreme limitation that Plaintiff cannot perform this activity in a regular work setting. R. 862–63. Ms. Melzer opined, *inter alia*, that Plaintiff's ability in each of the following areas ranged from unlimited or very good to unable to meet competitive standards, explaining that this was Plaintiff at "his best to his worst": maintain regular attendance and be punctual within customary, usually strict tolerances; complete a normal workday and workweek without interruptions from psychologically based symptoms; carry out detailed instructions; and deal with stress of semiskilled and skilled work. R. 863–64. She also opined that Plaintiff's ability to perform in each of the following areas ranged from limited but satisfactory to unable to meet competitive needs: accept instructions and respond appropriately to criticism form supervisors; respond appropriately to changes in a routine work setting; interact with the general public; and use public transportation. *Id.* Ms. Melzer further opined that Plaintiff's ability to perform in each

18

of the following areas ranged from seriously limited but not precluded, to unable to meet competitive standards: deal with normal work stress; understand and remember detailed instructions; and travel in familiar places. *Id*. According to Ms. Melzer, Plaintiff had an unlimited or very good ability to understand, remember, and carry out very short and simple instructions; sustain an ordinary routine without special supervision; make simple work-related decisions; perform at a consistent pace without an unreasonable number and length of rest periods; ask simple questions or request assistance; be aware of normal hazards and take appropriate precautions; set realistic goals or make plans independently of others; maintain socially appropriate behavior; and adhere to basic standards of neatness and cleanliness. *Id*. Ms. Melzer also denied that Plaintiff had a low IQ or reduced intellectual functioning. R. 864. According to Ms. Melzer, Plaintiff's impairments or treatment would cause him to miss more than four days of work per month. R. 865. She denied that he was a malingerer, explaining that his impairments were reasonably consistent with the symptoms and functional limitations she identified and that Plaintiff's "Aspergers [sic] is the cause of his impairments[.]" *Id*.

When crafting the RFC determination at step four, the ALJ found Ms. Melzer's opinion "partially persuasive," reasoning as follows:

> In addition, Susan Melzer, MSW, LCSW, provided a treating source opinion in 2020 (Ex. 12F, p. 1). The claimant reengaged in treatment, being treated every two weeks for social phobia, Asperger's and depression (Ex. 12F, p. 1). Ms. Melzer noted ongoing signs of depression, anxiety and social awkwardness, as well as low self-esteem (Id.). Based on this treatment, Ms. Melzer opined that the claimant could "easily" function in a job that was from home and had minimal interaction with employees or bosses; however, noted that claimant's anxiety limited his ability to join the workforce (Id.). In addition, she noted that the claimant's ability to perform work tasks ranged from good to moderate and marked limitations, especially in areas of maintaining regular attendance and being punctual, completing a workday without interruption form mental symptoms, her ability to accept instructions and respond to criticism, respond to changes in the wok setting, dealing with normal work stress, completing skilled work, and interacting with the public, traveling to unfamiliar places, and using public transportation (Ex. 12F, pp.

3, 4). Moreover, Ms. Mezler noted that the claimant would miss more than four days of work each month (Id. at p. 5). This opinion is partially persuasive, as the moderate limitations in concentration and persistence, as well as social interactions, is consistent with the course of treatment and the claimant's ongoing diagnoses. However, the marked limitations and absenteeism is not supported by the overall record as the claimant showed good results with routine care. As such, this portion of the opinion is not persuasive.

R. 22–23. The Court finds no error with the ALJ's reasoning in this regard. *See* 20 C.F.R. §§ 404.1520c(c)(1), (c)(2) (addressing the supportability and consistency factors when considering medical opinions), 416.920c(c)(1), (c)(2) (same).

Plaintiff, however, challenges the ALJ's consideration of this opinion, arguing that the record supports Ms. Melzer's opinion regarding absenteeism. *Plaintiff's Memorandum of Law*, ECF No. 15, p. 19–20; *Plaintiff's Reply Brief*, ECF No. 17, p. 3. Plaintiff contends that he continually missed school in high school and had to be home schooled and had an abbreviated school day because of his anxiety. *Id.* (citations omitted). He points out that Ms. Melzer specifically found that Asperger's caused his anxiety, which limits him from joining the work force, and found that Plaintiff had "persistent disturbances of mood and affect." *Id.* (citations omitted). Plaintiff goes on to complain that, while the ALJ discounted Ms. Melzer's absenteeism opinion because Plaintiff had "good results with routine care," the ALJ did not cite to support in the record and his school attendance establishes the opposite. *Plaintiff's Reply Brief*, ECF No. 17, p. 3.

Plaintiff's arguments are not well taken. Although the ALJ did not cite to a specific portion of the record when discounting Ms. Melzer's opinion regarding absenteeism, the ALJ discussed evidence relating to "good results with routine care" throughout her opinion. *See* R. 19 ("The claimant's condition was also described as being stable and controlled with routine treatment."), 20 ("[T]reatment improved his symptoms, his depression was eventually controlled

and the claimant noted no functional difficulties[.]"), 21 (Plaintiff "was diagnosed with
Asperger's syndrome in 2015 (Ex. 6F, pp. 37, 47). However, Plaintiff stopped psychiatric
treatment in 2016, but he was still taking Wellbutrin as directed (Id.). Nonetheless, his symptoms
were reported as being moderate (Id. at p. 38). Despite continuing symptoms, mental evaluations
consistently showed that the claimant was fully oriented, had a blunted affect, but was not
agitated, was not compulsive, displayed appropriate behavior for his age, had normal knowledge
and language, and no suicidal ideation (Id. at pp. 59, 65, 71).")', 22 ("Anxiety symptoms were
noted to improve with treatment of his gastrointestinal condition as well[.]"), *id.* ("More recent
treatment notes show that the claimant was doing well in 2016, 2017, 2018, 2019, citing that
anxiety and depression were controlled and stable, and the claimant was interested in going back
to school for computer science (Ex. 7F, pp. 2, 12, 19, 22, 23; Ex. 11F, p. 5; Ex. 13F, pp. 4, 5). He
also showed normal mental status exams throughout this period (Id.). Furthermore, the claimant
also noted improved Asperger's symptoms with medication treatment (Id.)."), *id.* (explaining
that "[t]hese improvements with routine care are supported by" Dr. Lazarus' consultative
examination during which Plaintiff "confirmed that he was well maintained on bupropion XL
150 mg., and was taking no other medications (Id. [Ex. 9F, p. 1]). He also reported no psychiatric
treatment for at least the past two years[.]"). Substantial evidence therefore supports the ALJ's
reasoning when discounting Ms. Melzer's opinion regarding Plaintiff's absenteeism. *Id.*; *see also*
*Serrano v. Kijakazi*, No. CV 20-3985, 2021 WL 4477137, at *3–4 (E.D. Pa. Sept. 30, 2021) ("In
this case, the ALJ discussed and analyzed the evidence extensively before determining the
persuasiveness of the medical opinions. . . . The ALJ was not required to repeat this information
for the sake of elaborating on her findings of persuasiveness.").

Although Plaintiff cites to portions of the record that he believes supports Ms. Melzer's opinion, the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)); *see also Messina v. Comm'r of Soc. Sec.*, No. 20-1884, 2021 WL 422444, at *3 (3d Cir. Feb. 8, 2021) ("Yet we cannot reweigh the evidence or make our own factual determinations."); *Chandler*, 667 F.3d at 359 ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard].");  *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 880 (3d Cir. 2005) ("When 'presented with the not uncommon situation of conflicting medical evidence . . .  [t]he trier of fact has the duty to resolve that conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)).

### 2.      Lewis Lazarus, Ph.D.

On January 30, 2019, Lewis Lazarus, Ph.D., conducted a consultative examination. R. 844–47. Dr. Lazarus noted that Plaintiff was prescribed bupropion XL 150 mg and "has been on other medications in the past but only the one medication at this time." R. 844. He also noted that Plaintiff "has had outpatient mental health treatment in the past but nothing for at least two years now." *Id.* Dr. Lazarus summarized Plaintiff's current psychological status as follows:

> The claimant noted feeling dysphoric and sad a majority of the time with fatigue and loss of energy nearly every day. He noted occasional feelings of worthlessness but denied hopelessness feelings. Sleep has been marked by difficulties in falling asleep. Appetite is fair with no reported weight change. He noted excessive apprehension and increased stressfulness in meeting new people. There was no evidence of any significant panic symptoms other than occasionally getting short of breath and wanting to leave the situation that he is in because of anxiety. There was no evidence of any manic symptoms or disturbances in thought processes such as hallucinations or delusions. *Cognitively, he has some recent memory problems and difficulties in learning new information.*

R. 845 (emphasis added). Upon mental status examination, Dr. Lazarus noted that Plaintiff was cooperative; his manner of relating and his social skills were adequate; he was appropriately and neatly dressed and was adequately groomed; his eye contact was appropriate; his thought processes were coherent and goal directed with no evidence of any hallucinations, delusions, or paranoia; he had a full affect but was somewhat apathetic at times; he was polite and cooperative. *Id*. Plaintiff was "alert and oriented in all spheres including knowing the current President of the United States. Recent and remote memory skills were considered to be intact. He was able to immediately recall 3/3 items and 3/3 items were recalled after a brief 5-10 minute delay." *Id*. Dr. Lazarus administered the Wechsler Adult Intelligence Scale, Fourth Edition ("WAIS-IV"), which "demonstrated [a] general level of intellectual functioning which was considered to be within the average range relative to those his age." R. 845–46. Dr. Lazarus expressly considered Plaintiff's activities of daily living as follows:

> The claimant can dress, bathe and groom himself independently. He *can do some basic meal preparation but nothing significant*. He can clean and do his own laundry and *cannot shop on his own or handle money on his own*. He can take his own medication. He does not have a driver's license. He mostly relates with others online and not in person. He does not have any significant conflicts with his family but is rather withdrawn. He enjoys playing video games and going on computers. His mother indicated that he often likes to just take them apart. A typical day consists of getting up, taking his medication, grooming, eating something, going online, watching videos, and then eats something and later goes to bed. Most of his days are spent at home.

R. 846 (emphasis added). Dr. Lazarus diagnosed major depressive disorder, mild, single, with anxious features; unspecified autism spectrum disorder without intellectual impairment; and problems with vocational functioning. R. 846. He made the following recommendations:

> The recommendations at this time are for vocational assessment and rehabilitation in order to assist the claimant in finding an appropriate vocation, taking into account the noted level of cognitive functioning on intellectual testing. He can follow and understand the topic of a conversation and demonstrated largely average

23

> functioning in many areas. *He will likely have the most significant difficulties with respect to interpersonal relationships and dealing with others.* To that end, individual psychological counseling would certainly be warranted, focusing on social skills training.

*Id*. (emphasis added). Dr. Lazarus' prognosis was "[f]air to guarded; however, with the appropriate interventions and support, his prognosis would be expected to improve." *Id*. According to Dr. Lazarus, Plaintiff "is not considered capable of fully and entirely managing his own funds due to his questionable reasoning and judgment." *Id*.

In the instant action, the ALJ considered Dr. Lazarus' consultative examination as follows:

> These improvements with routine treatment are supported by Dr. Lewis Lazarus, Ph.D., consultative examination that note a history of special education and increased difficulty in high school with anxiety, depression and gastrointestinal problems that required him to take online classes because he was missing a lot of school (Ex. 9F, p. 1). Moreover, during this exam in 2019, the claimant confirmed that he was well maintained on bupropion XL 150 mg., and was taking no other medications (Id.). He also reported no psychiatric treatment for at least the past two years, and the claimant was described as cooperative, having adequate social skills, coherent thought process and being fully oriented (Id. at p. 2). The claimant's memory was intact and he showed an IQ score of 92 (Id.). While the claimant was noted to be withdrawn, he was able to complete all his daily activities independently, and was expected to improve (Id. at p. 3).

R. 22.

Plaintiff contends that the ALJ erred by failing "to even indicate what level of persuasiveness she found Dr. Lazarus's report." *Plaintiff's Memorandum of Law*, ECF No. 15, p. 20; *see also Plaintiff's Reply Brief*, ECF No. 17, pp. 3–4. According to Plaintiff, this failure is "crucial" because Dr. Lazarus found "Plaintiff much more limited than the ALJ did": "the Plaintiff can only do 'basic meal prep, but nothing significant. . . . cannot shop on his own or handle money on his own'; he has 'recent memory problems and difficulty learning new information'; and 'he will likely have the most significant difficulties with respect to

24

interpersonal relationship and dealing with others.' (R. 845, 846)." *Plaintiff's Memorandum of Law*, ECF No. 15, p. 20; *see also Plaintiff's Reply Brief*, ECF No. 17, pp. 3–4. Plaintiff further argues that, without any discussion of the persuasiveness of this opinion, "subsequent reviewers are unsure if the ALJ took into consideration any limitations imposed by Dr. Lazarus or just cherry picked the social interaction limitation and disregarded all others." *Plaintiff's Reply Brief*, ECF No. 17, pp. 3–4.

Plaintiff's arguments are not well taken. Even if the ALJ erred in failing to discuss the persuasiveness of Dr. Lazarus' opinion, any such error is harmless. Plaintiff simply points to these excerpts from Dr. Lazarus' report without explaining why the RFC—which limits Plaintiff to simple and routine tasks with no interaction with the public and only occasional interaction with coworkers and supervisors—does not accommodate any limitation that Plaintiff believes Dr. Lazarus articulated, nor does Plaintiff identify any additional functional limitations not already included in the RFC purportedly flowing from Dr. Lazarus' report. *See Plaintiff's Memorandum of Law*, ECF No. 15, p. 20; *Plaintiff's Reply Brief*, ECF No. 17, pp. 3–4. Plaintiff, who bears the burden at step four, *see Smith*, 631 F.3d at 634, simply has not established that the ALJ's failure to discuss the persuasiveness of Dr. Lazarus' opinion is anything other than harmless error. *See Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination. . . . [T]he party seeking reversal normally must explain why the erroneous ruling caused harm."). Accordingly, the ALJ's alleged error in this regard will not serve as a basis for undermining the RFC and remanding this action. *See Pickerin v. Colvin*, No. 14-6130, 2016 WL 5745103, at *5 (D.N.J. Sept. 30, 2016) (affirming the ALJ decision where "Plaintiff does not offer any specific limitations that the ALJ should have included in the RFC assessment . . . [and b]ecause it is

Plaintiff's burden to show that the ALJ's finding of residual functional capacity was not

supported by substantial evidence, and Plaintiff has not identified any specific error").

### 3.    Michelle Festa, M.D.

Plaintiff points to statements in the treatment notes of Michelle Festa, M.D., Plaintiff's

treating physician. *Plaintiff's Memorandum of Law*, ECF No. 15, pp. 20−21 (noting that Dr.

Festa found that "that it would be 'great for [the claimant] to go to school and get a job, but if he

is unable to do so with his condition, he should look into disability'" (citing R. 764); that

Plaintiff  "gives 'minimal responses to questions' and has a 'very blunted affect'" (citing R.

741); Plaintiff's "ongoing anxiety diagnosis[,]" which Plaintiff describes as "key"; and arguing

that such evidence is consistent with [Dr. Festa's] previous notes regarding Plaintiffs [sic]

impairments preventing him from attending school on a sustained basis" (citing R. 586, 588, 609,

616, 629, 639)); *Plaintiff's Reply Brief*, ECF No. 17, p. 5 ("However, Dr. Festa found on

multiple occasions that Plaintiffs [sic] impairments prevented him from attending school on a

sustained basis.") (citing R. 586, 588, 609, 616, 629, 639). It is not entirely clear what Plaintiff

intends by citing to this evidence and the Court will not construct Plaintiff's arguments for him.

*See Padgett v. Comm'r of Soc. Sec.*, No. CV 16-9441, 2018 WL 1399307, at *2 (D.N.J. Mar. 20,

2018) ("[B]ecause Plaintiff has articulated no analysis of the evidence, the Court does not

understand what argument Plaintiff has made here. Plaintiff has done no more than throw down a

few pieces of an unknown jigsaw puzzle and left it to the Court to put them together. The Court

does not assemble arguments for a party from fragments.").

However, even construing Plaintiff's position to be that the ALJ failed to consider these

statements from Dr. Festa's treatment notes when fashioning the RFC, *see Plaintiff's*

*Memorandum of Law*, ECF No. 15, pp. 9, 20−21, that argument is unavailing. The ALJ, when

fashioning the RFC, expressly considered Dr. Festa's treatment notes that reflected increased

anxiety symptoms:

> In addition, treatment notes from Dr. Michelle Festa in 2011, noted that the claimant was doing well but anxiety increased when he returned to school in the fall of 2011 (Ex. 5F, p. 83). Noted anxiety symptoms included vomiting and diarrhea, which limited his ability to attend school (Id.). He was placed on home schooling to deal with problems with attendance due to his condition (Id.). Notes from 2011 also cite to increasing anxiety attacks, fatigue, difficulty concentrating, irritability, nausea, diarrhea, and cramping (Ex. 5F, pp. 107-09). The claimant was treated for H.Pylori and treatment showed improvement in his condition (Id. at p. 124). Anxiety symptoms were noted to improve with treatment of his gastrointestinal condition as well (Id.). In addition, the claimant was treated for insomnia in 2017, noting worsening symptoms, but the insomnia was linked to side effects from psychiatric medications (Ex. 6F, p. 28).

R. 22. The ALJ went on to consider Dr. Festa's treatment notes throughout her step four

analysis, including that physician's statements reflecting that Plaintiff's anxiety symptoms

increased at times and that these symptoms interfered with his school attendance, but that

Plaintiff's symptoms improved and his anxiety was controlled and stable and that his mental

status examinations were normal. R. 20−21 ("The claimant has a history of depression and

anxiety (Ex. 6F, pp. 28 [R. 704, reflecting Dr. Festa's notes dated August 14, 2017], 33). The

record includes periods of increased symptoms, especially in 2011 when he was suffering from

gastrointestinal problems that increased his anxiety (Ex. 5F [R. 506−676, reflecting years of Dr.

Festa's treatment notes]). However, treatment improved his symptoms, his depression was

eventually controlled and the claimant noted no functional difficulties (Ex. 6F, p. 28 [R. 704,

reflecting Dr. Festa's notes dated August 14, 2017]). Nonetheless, the claimant continued to

show depressed mood, diminished interest or pleasure, but denied other symptoms such as

fatigue (Id.)."), 21 ("In addition, the claimant was diagnosed with Asperger's syndrome in 2015

(Ex. 6F, pp. 37 [R. 713, reflecting Dr. Festa's notes dated August 25, 2016], 47 [R. 723,

reflecting Dr. Festa's notes dated November 27, 2015]). However, he stopped psychiatric

treatment in 2016, but he was still taking Wellbutrin as directed (Id.). Nonetheless, his symptoms were reported as being moderate (Id. at p. 38 [R. 714, reflecting Dr. Festa's notes dated August 25, 2016]). Despite continuing symptoms, mental evaluations consistently showed that the claimant was fully oriented, had a blunted affect, but was not agitated, was not compulsive, displayed appropriate behavior for his age, had normal knowledge and language, and no suicidal ideation (Id. at pp. 59 [R. 735, reflecting Dr. Festa's notes dated October 31, 2012], 65 [R. 741, reflecting Dr. Festa's notes dated February 29, 2012], 71 [R. 747, reflecting Dr. Festa's notes dated September 13, 2011])"), 22 ("[T]he claimant was treated for insomnia in 2017, noting worsening symptoms, but the insomnia was linked to side effects from psychiatric medications (Ex. 6F, p. 28 [R. 704, reflecting Dr. Festa's notes dated August 14, 2017])"; "More recent treatment notes show that the claimant was doing well in 2016, 2017, 2018, 2019, citing that anxiety and depression were controlled and stable, and the claimant was interested in going back to school for computer science (Ex. 7F, pp. 2 [R. 764, reflecting Dr. Festa's notes dated July 3, 2018], 12 [R. 774, reflecting Dr. Festa's notes dated August 14, 2017], 19, 22 [R. 84, reflecting Dr. Festa's notes dated August 25, 2016], 23 [R. 785, reflecting Dr. Festa's notes dated August 25, 2016]; Ex. 11F, p. 5; Ex. 13F, pp. 4, 5). He also showed normal mental status exams throughout this period (Id.). Furthermore, the claimant also noted improved Asperger's symptoms with medication treatment (Id.)"). As with Dr. Lazarus' report, Plaintiff has not shown how any of these statements require any new or different limitations or otherwise undermine the RFC found by the ALJ. *See Pickerin*, 2016 WL 5745103, at *5; *cf. Shinseki*, 556 U.S. at 409–10.

In short, for all these reasons, the Court concludes that the ALJ's findings regarding Plaintiff's RFC are consistent with the record evidence and enjoy substantial support in the

record, as does her consideration of the opinions of Ms. Melzer and Dr. Lazarus and the statements of Dr. Festa.

### B.    Subjective Statements

Plaintiff also challenges the ALJ's consideration of his subjective complaints. *Plaintiff's Memorandum of Law*, ECF No. 15, pp. 21−24; *Plaintiff's Reply Brief*, ECF No. 17, pp. 6−7. Plaintiff's arguments are not well taken.

"Subjective allegations of pain or other symptoms cannot alone establish a disability." *Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. § 416.929(a)). Instead, objective medical evidence must corroborate a claimant's subjective complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20 C.F.R. § 404.1529(a)). Specifically, an ALJ must follow a two-step process in evaluating a claimant's subjective complaints. SSR 16-3p, 2016 WL 1119029 (March 16, 2016). First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id.* "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" *Id.*; *see also Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and persistence of the pain or symptom and the extent to which it affects the ability to work] obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.") (citing 20 C.F.R. § 404.1529(c)). In conducting this evaluation, an ALJ must consider the objective medical evidence as well as other evidence

relevant to a claimant's subjective symptoms. 20 C.F.R. § 404.1529(c)(3) (listing the following factors to consider: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate pain or other symptoms; treatment, other than medication, currently received or have received for relief of pain or other symptoms; any measures currently used or have used to relieve pain or other symptoms; and other factors concerning your functional limitations and restrictions due to pain or other symptoms). Finally, an "ALJ has wide discretion to weigh the claimant's subjective complaints, *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them where they are unsupported by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citing 20 C.F.R. § 416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.,* 186 F. App'x 280, 286 (3d Cir. 2006) ("[A] reviewing court typically defers to an ALJ's credibility determination so long as there is a sufficient basis for the ALJ's decision to discredit a witness.").[8]

Here, the ALJ followed this two-step evaluation process. The ALJ specifically considered Plaintiff's subjective complaints. R. 20. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause symptoms, but that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. *Id*. The ALJ further explained that Plaintiff's

---

[8]SSR 16-3p superseded SSR 96-7p on March 26, 2016, and eliminated the use of the term "credibility." SSR 16-3p. However, "while SSR 16-3P clarifies that adjudicators should not make statements about an individual's truthfulness, the overarching task of assessing whether an individual's statements are consistent with other record evidence remains the same." *Levyash v. Colvin*, No. CV 16-2189, 2018 WL 1559769, at *8 (D.N.J. Mar. 30, 2018).

> mental impairments cause significant limitations in his ability to socialize and his ability to perform complex work, however, the record details that the claimant is intelligent and spends his time online, which supports greater levels of functioning than what he alleges. Moreover, the claimant shows no real attempts to secure work. Overall, the record shows that the claimant's mental impairments are controlled and stable with regular treatment, and there is little support in the objective treatment notes to support disability.

*Id*. In addition, as previously discussed, the ALJ detailed years of medical evidence and record testimony to support her findings. R. 20–23. In the view of this Court, this record provides substantial support for the ALJ's decision to discount Plaintiff's subjective statements as inconsistent with the record evidence. *Van Horn*, 717 F.2d at 873; *Miller*, 719 F. App'x at 134; *Izzo*, 186 F. App'x at 286.

Plaintiff, however, points to evidence that he believes supports his subjective statements, including leaving school and finishing classes at home, vomiting when he becomes anxious, and being anxious before and during the administrative hearing. *Plaintiff's Memorandum of Law*, ECF No. 15, pp. 23–24; *Plaintiff's Reply Brief*, ECF No. 17, pp. 6–7. Plaintiff's argument is not well taken. As set forth above, the ALJ expressly considered Plaintiff's difficulty attending school in person. R. 21–22. The ALJ also noted Plaintiff's anxiety symptoms, including vomiting. R. 22. In any event, to the extent that Plaintiff points to evidence that he believes undermines the ALJ's consideration, so long as the ALJ satisfies the substantial evidence standard, the Court will uphold the ALJ's decision even if contrary evidence exists that justifies the opposite conclusion. *Johnson*, 497 F. App'x at 201; *Chandler*, 667 F.3d at 359; *Hatton*, 131 F. App'x at 880. This Court therefore declines Plaintiff's invitation to re-weigh the evidence or to impose its own factual determinations on this record. *See Chandler*, 667 F.3d at 359; *Zirnsak*, 777 F.3d at 611 (stating that a reviewing court "must not substitute [its] own judgment for that of the fact finder").

Plaintiff also objects to the ALJ's statement that Plaintiff "shows no real attempts to secure work[,]" R. 20, and insists that there were reasons for not doing so. *Plaintiff's Memorandum of Law*, ECF No. 15, p. 24; *Plaintiff's Reply Brief*, ECF No. 17, p. 7. However, a court may properly consider a claimant's poor work history when evaluating subjective statements. *See Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 147 (3d Cir. 2007) ("The ALJ discounted Salles's testimony regarding her subjective symptoms because of her poor work history, which reflected that she was unemployed from 1987 to 2000. Salles does not dispute this interpretation of her employment record, and the ALJ properly considered it.") (citations omitted); *Byers v. Berryhill*, No. CV 17-34-E, 2018 WL 2283034, at *1 (W.D. Pa. Mar. 26, 2018) ("He properly considered the impact of Plaintiff's poor work history on his credibility.") (citations omitted). In any event, Plaintiff's failure to make real attempts to secure work was but one relevant factor that the ALJ considered when assessing Plaintiff's subjective statements. R. 20–23.

Finally, Plaintiff also argues that "the ALJ improperly cherry-picked reports of activity that the ALJ believed to be contrary to a finding of disability to the exclusion of significant evidence supportive of a disability finding[,]" pointing to evidence reflecting that Plaintiff left school because of his anxiety, vomits when he becomes anxious, avoids stressful situations, and tries to find a quiet area if he cannot leave a stressful situation. *Plaintiff's Reply Brief*, ECF No. 17, p. 6. As set forth above, however, the ALJ in fact considered Plaintiff's difficulty attending school, vomiting when he became anxious, and social limitations. R. 20–23. Based on this record, Plaintiff has not persuaded this Court that the ALJ engaged in impermissible cherry picking. *See Johnson*, 497 F. App'x at 201; *Chandler*, 667 F.3d at 359; *Hatton*, 131 F. App'x at 880.

For all these reasons, the Court concludes that the ALJ sufficiently explained her reasoning in assessing Plaintiff's subjective complaints, and the ALJ's findings in this regard are supported by substantial evidence in the record and are therefore entitled to this Court's deference. *See* SSR 16-3p; *Miller*, 719 F. App'x at 134; *cf. Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's testimony regarding pain and other subjective complaints are for the ALJ to make.") (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)); *Davis v. Comm'r Soc. Sec.*, 105 F. App'x 319, 322 (3d Cir. 2004) (finding that the ALJ sufficiently evaluated the plaintiff's testimony where "the ALJ devoted two pages to a discussion of claimant's subjective complaints and cited Claimant's daily activities and objective medical reports"). Accordingly, the ALJ's assessment of Plaintiff's subjective complaints cannot serve as a basis for remand of this action. *Id.*

### C.      Step Five Determination

Plaintiff also challenges the ALJ's determination at step five of the sequential evaluation, arguing that the RFC was inconsistent with the jobs identified by the vocational expert. *Plaintiff's Memorandum of Law*, ECF No. 15, pp. 24–27; *Plaintiff's Reply Brief*, ECF No. 17, pp. 7–9. For the reasons that follow, Plaintiff's arguments are not well taken.

At step five, an ALJ must decide whether the claimant, considering the claimant's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). Unlike in the first four steps of the sequential evaluation, the Commissioner bears the burden of proof at step five. *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 205 (3d Cir. 2008) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005)). "'Advisory testimony from a vocational expert is often sought by the ALJ for that purpose [of determining

whether other jobs exist in significant numbers in the national economy that the claimant could

perform] . . . and factors to be considered include medical impairments, age, education, work

experience and RFC.'" *Id.* at 205–06 (quoting *Rutherford*, 399 F.3d at 551). "Testimony of

vocational experts in disability determination proceedings typically includes, and often centers

upon, one or more hypothetical questions posed by the ALJ to the vocational expert."

*Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). "Usually, the ALJ will ask whether a

hypothetical claimant with the same physical and mental impairments as the claimant can

perform certain jobs that exist in the national economy." *Zirnsak v. Colvin*, 777 F.3d 607, 614

(3d Cir. 2014) (citing *Podedworny*, 745 F.2d at 218). "While 'the ALJ must accurately convey to

the vocational expert all of a claimant's credibly established limitations,' . . . '[w]e do not require

an ALJ to submit to the vocational expert every impairment alleged by a claimant.'" *Smith v.

Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (quoting *Rutherford*, 399 F.3d at 554).

"[T]o accurately portray a claimant's impairments, the ALJ must include all 'credibly established

limitations' in the hypothetical. *Zirnsak*, 777 F.3d at 614 (citing *Rutherford*, 399 F.3d at 554).

Credibly established limitations are limitations "that are medically supported and otherwise

uncontroverted in the record." *Rutherford*, 399 F.3d at 554. "Limitations that are medically

supported but are also contradicted by other evidence in the record may or may not be found

credible—the ALJ can choose to credit portions of the existing evidence but cannot reject

evidence for no reason or for the wrong reason." *Id.* (citations and internal quotation marks

omitted). A "vocational expert's testimony concerning a claimant's ability to perform alternative

employment may only be considered for purposes of determining disability if the [ALJ's

hypothetical] question accurately portrays the claimant's individual physical and mental"

limitations. *Podedworny*, 745 F.2d at 218. Stated differently, "[a] hypothetical question must

reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987).

In the case presently before the Court, the hypothetical question posed by the ALJ to the vocational expert assumed a claimant with Plaintiff's vocational profile and the RFC found by the ALJ. R. 20, 49. The vocational expert responded that the jobs of commercial cleaner, salvage laborer, and  hospital laundry aid would be appropriate for such an individual. R. 49–50. Plaintiff now raises three challenges to this testimony: (1) that work involving "simple instructions" is inconsistent with the definitions in the Dictionary of Occupational Titles ("DOT")[9] of the jobs of commercial cleaner and salvage laborer, which require reasoning level 2; (2) that all three jobs identified by the vocational expert required a General Learning Ability Level of 4, a requirement that Plaintiff cannot meet; and (3) the RFC's limitation to occasional contact with supervisors and coworkers conflicts with "the underlying definitions of unskilled work." *Plaintiff's Memorandum of Law*, ECF No. 15, pp. 26–27; *Plaintiff's Reply Brief*, ECF No. 17, pp. 7–9. However, Plaintiff's counsel never objected or challenged the vocational expert's testimony in this regard at the administrative hearing. R. 49–51. Plaintiff's current attempt to raise these challenges therefore comes too late and will not serve as a basis to remand this matter. *See Tonti v. Saul*, No. CV 20-92, 2021 WL 518178, at *3 (W.D. Pa. Feb. 11, 2021) ("Here, [the plaintiff] neither objected to the VE's testimony at the hearing nor obtained any agreement from the ALJ either prior to the hearing to hold the proceedings open for post-hearing

---

[9] The DOT is a "publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy," and which ALJs generally consult to determine whether there are any jobs that a claimant can perform. *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002).

submissions. Consequently, she waived the right to object to that testimony."); *Brown v. Comm'r of Soc. Sec.*, No. CV 19-2110, 2020 WL 1244186, at *5 (E.D. Pa. Mar. 16, 2020) ("Brown's counsel did not object to either the VE's qualifications or to her testimony in this respect. . . . Therefore, the ALJ did not err in relying on the VE's testimony.") (citations omitted); *O'Neill v. Comm'r of Soc. Sec.*, No. CV 18-0698, 2019 WL 413539, at *9 (D.N.J. Jan. 31, 2019) (declining to remand the matter where the plaintiff's challenge to an alleged discrepancy between the vocational expert's testimony and the DOT listings was unexplored during the hearing and later raised by the plaintiff in challenging the ALJ's ruling).

However, even if the Court considered the merits of Plaintiff's step five challenges, none of them provide a basis for remanding this action. Plaintiff first argues that the restriction to work involving "simple instructions" is inconsistent with the DOT definitions for the commercial cleaner (DOT 381-687.014) and salvage laborer (DOT 929-687.022), occupations that require reasoning level 2, *i.e.*, an ability to carry out "detailed" instructions. *Plaintiff's Memorandum of Law*, ECF No. 15, p. 26; *Plaintiff's Reply Brief*, ECF No. 17, pp. 8−9. Plaintiff's argument is not well taken. "[t]he qualification categories listed by the DOT for each job include the job's Strength level, General Educational Development ("GED") level, and its Specific Vocational Preparation ("SVP") level." *Zirnsak*, 777 F.3d at 616 (quoting Appendix C, DOT). "GED measures 'those aspects of education (formal and informal) which are required of the worker for satisfactory job performance.'" *Id*. "GED is broken into three categories: (1) reasoning development, (2) mathematical development, and (3) language development. . . . Reasoning levels in the DOT range from level 1 to level 6." *Id*. (citing Appendix C, DOT). GED reasoning level 1 applies "commonsense understanding to carry out simple one- or two-step instructions" in "standardized situations with occasional or no variables in or from these situations

encountered on the job." Appendix C, 1991 WL 688702. Reasoning level 2 applies

"commonsense understanding to carry out detailed but uninvolved written or oral instructions" in

"problems involving a few concrete variables in or from standardized situations." *Id.* "SVP

levels, on the other hand, measure the skill level necessary to perform a particular job." *Zirnsak*,

777 F.3d at 616 (citing SSR 00–4p, 2000 WL 1898704, at *3 (Dec. 4, 2000)). "SVP levels in the

DOT range from level 1 to level 9" and "[t]he DOT skill levels correspond with the second

source of information relied on by the Commissioner: the CFR." *Id.* (citing SSR 00–4p). The

CFR categorizes occupations into three classes: unskilled, semi-skilled, and skilled. 20 C.F.R. §

404.1568(a)–(c). "Unskilled work is work which needs little or no judgment to do simple duties

that can be learned on the job in a short period of time[,]" while "[s]emi-skilled work is work

which needs some skills but does not require doing the more complex work duties," and

"[s]killed work requires qualifications in which a person uses judgment to determine the machine

and manual operations to be performed in order to obtain the proper form, quality, or quantity of

material to be produced."  *Id.* at § 404.1568(a), (b), (c). "[U]nskilled work corresponds to an

SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an

SVP of 5-9 in the DOT." SSR 00-4p, 2000 WL 1898704, at *3.

While Plaintiff now urges this Court to find that the reasoning level 2 associated with the

jobs of commercial cleaner and salvage laborer exceed the RFC for simple and routine work, the

United States Court of Appeals for the Third Circuit has held that a job with a reasoning level 2

does not "contradict the mandate that [the claimant's] work be simple, routine and repetitive."

*Money v. Barnhart*, 91 F. App'x 210, 215 (3d Cir. 2004); *see also Jones v. Astrue*, 570 F. Supp.

2d 708, 716 (E.D. Pa. 2007) (finding no conflict between simple and routine tasks and the

definition of reasoning level 2) *aff'd*, 275 F. App'x 166, 168 (3d Cir. 2008)). The Third Circuit

has also held that "there is no bright-line rule stating whether there is a *per se* conflict between a job that requires level 3 reasoning and a finding that a claimant should be limited to simple and routine work." *Zirnsak*, 777 F.3d at 618. As previously noted, Plaintiff's counsel did not object to the vocational expert's testimony nor did she otherwise identify a conflict between such testimony and the DOT. *See generally* R. 49–51. Under these circumstances, to remand this action would require that the Court disregard this uncontroverted evidence and–contrary to Third Circuit authority–establish a bright-line rule in this area. *See Zirnsak*, 777 F.3d at 618. This the Court declines to do. Based on the record presently before this Court and the applicable law, the Court concludes that the ALJ in this case was entitled to rely on the vocational expert's uncontroverted testimony at step five. *See id.*; *cf. Money*, 91 F. App'x at 215; *Dance v. Comm'r of Soc. Sec.*, No. 1:20-CV-03141-NLH, 2021 WL 3144696, at *9 (D.N.J. July 26, 2021) (stating that "[t]his Court has also addressed - and rejected - " the claimant's argument that "the ALJ erred by finding Plaintiff to be capable of performing two of the jobs . . . because the DOT lists these jobs as having a reasoning level of 2, which is a higher level than the RFC's requirement that Plaintiff be limited to jobs with only simple instructions and tasks") (citations omitted); *Soto v. Comm'r of Soc. Sec.*, No. CV 18-14165, 2020 WL 7022652, at *8 (D.N.J. Nov. 30, 2020) ("Where, as here, plaintiffs were limited to simple, repetitive tasks, courts have repeated[ly] found that the plaintiffs are at least suited for jobs that require Reasoning Level 2.") (citations omitted); *Rafine v. Comm'r of Soc. Sec.*, No. 1:19-CV-14215, 2020 WL 3073829, at *8 (D.N.J. June 10, 2020) ("Short of the ALJ repeating the exact phrase used by the DOT in its definition of GED level 2, something which the ALJ is not required to do, Plaintiff offers no other way the ALJ could have articulated the 'simple, routine tasks' limitation differently so that the limitation would align with a GED level 2 job."); *Molina Virola v. Comm'r of Soc. Sec.*, No. 18-CV-4778,

2020 WL 362747, at *4 (E.D. Pa. Jan. 22, 2020) ("The reasoning level determined by the ALJ

was not limited to the ability to follow simple one or two-step instructions, which might trigger

concern about her ability to perform jobs that require reasoning level 2. . . . Instead, the ALJ

determined that [the claimant] can perform routine tasks and make simple work-related

decisions. Such a limitation does not disqualify the plaintiff from work that requires reasoning

level 2[.]") (citations omitted); *Montgomery v. Berryhill*, No. CV 17-0770, 2018 WL 1317856, at

*5 (D.N.J. Mar. 14, 2018) (finding that "the ALJ's reliance on vocational expert testimony was

"inherently reasonable" even though the claimant argued that "the ALJ needed an explanation

from the [vocational expert] as to how the identified jobs—all with a DOT reasoning level of

two, and thus allegedly beyond Plaintiff's mental abilities—comported with Plaintiff's

deficiencies" because "Third Circuit precedent has established that level two jobs do not outright

conflict with a requirement for simple, routine, and repetitive work") (citations omitted).[10] In any

event, the Court notes that Plaintiff's challenge in this regard does not include a challenge to the

identified job of laundry aid (DOT 323-687.010). *Plaintiff's Memorandum of Law*, ECF No. 15,

---

[10] It is true that this and other district courts in this circuit have remanded actions because of an
inconsistency between the identified jobs and the DOT's reasoning levels, but those cases are
distinguishable. *See, e.g., Susan A. v. Comm'r of Soc. Sec.*, No. CV 21-07949, 2022 WL
2304666, at *8–10 (D.N.J. June 27, 2022) (remanding where the vocational expert testified that a
limitation to simple instructions would preclude the ability to carry out detailed written and oral
instructions and the vocational expert identified jobs with a reasoning level 2); *Thomas v.
Kijakazi*, No. CV 21-5153, 2022 WL 1747024, at *2 (E.D. Pa. May 31, 2022) (remanding where
the vocational expert testified that the claimant, "who was limited to simple, routine tasks, would
not be able to carry out detailed written and oral instructions" and the jobs identified by the
vocational expert and adopted by the ALJ "all carry reasoning levels of at least two"); *Vickers v.
Comm'r of Soc. Sec.*, No. CV 21-1093, 2022 WL 1620076, at *2 (W.D. Pa. May 23, 2022)
(reflecting a RFC that limited the claimant to "unskilled work at the SVP 1 or 2 levels" and "to
one or two step instructions" and remanding where jobs identified by the ALJ have a GED
reasoning level 2" and "at the very least, [] the record presents a potential conflict that must be
resolved").

p. 26. "At the end of the five-step analysis, an ALJ need only establish that a claimant is capable of performing one job that exists in significant numbers in the national economy." *Penrose v. Comm'r of Soc. Sec.*, No. 20-00011, 2020 WL 7640585, at *7 (D.N.J. Dec. 23, 2020); *see also Danilowicz, v. Kijakazi*, No. 1:20-CV-01605, 2022 WL 19624, at *8 (M.D. Pa. Jan. 3, 2022) ("The ALJ satisfied his step five determination by identifying at least one job that [the claimant] can perform existing in significant numbers in the national economy."); *Reed v. Comm'r of Soc. Sec.*, No. 1:16-CV-9099-NLH, 2018 WL 5617549, at *6 (D.N.J. Oct. 30, 2018) ("Moreover, the finding that Plaintiff retained the RFC to perform one job that exists in significant numbers in the national economy met the ALJ's burden at step five to show that Plaintiff is not disabled.") (citations omitted). Plaintiff does not challenge that this job exists in significant numbers in the national economy. *See*. R. 24 (reflecting that there are 50,000 jobs of laundry aid in the national economy).

Plaintiff next contends that all three of the occupations identified by the vocational expert "require a General Learning Ability Level of 4. That is the second lowest degree of aptitude ability, applicable to the lower third and excluding the bottom 10% of the population. (Revised Handbook for Analyzing Jobs, pg. 9-2). The RFC and the record show that Plaintiff cannot perform GLA 4 jobs like those the VE identified." *Plaintiff's Memorandum of Law*, ECF No. 15, p. 26. However, Plaintiff cites to no record evidence that he "cannot" perform such jobs nor does he otherwise explain why he is unable to perform these jobs. *See id.*; *see also* R. 20 (noting, *inter alia*, that Plaintiff "is intelligent and spends his time online"), 22 (reflecting, *inter alia*, that Plaintiff was interested in going back to school for computer science; had normal mental status exams; had an IQ score of 92; had coherent thought processes and intact memory; and was able to complete all daily activities independently); *Wilson v. Astrue*, 834 F. Supp. 2d 1295, 1303

(N.D. Okla. 2011) (rejecting claimant's argument that because he tested below the 10th percentile in many areas he was excluded from the jobs identified at step five that were at a level 4 in "General Learning Ability," "Verbal Aptitude," "Numerical Aptitude," and "Spacial Aptitude" in the DOT description of jobs and finding further that "it is not accurate to correlate borderline intellectual functioning with" these aspects of the DOT); *cf. Griffith v. Comm'r of Soc. Sec.*, 582 Fed. App'x 555, 565 (6th Cir. 2014) (rejecting similar argument where the claimant provided no evidence other than her IQ to demonstrate that her general learning ability was in the bottom 10% of the population and evidence suggested that the claimant was not in the bottom decile, including "the longitudinal record established that the claimant is able to function independently, read most things, work when she chooses, maintain and operate her own vehicle and deal with simple instructions, and that her most recent health treatment notes reflect no evidence of impairment in the area of daily living/personal care"). Plaintiff's conclusory argument in this regard therefore amounts to nothing more than rank speculation.

In continuing to challenge the ALJ's findings at step five, Plaintiff next argues that the vocational expert and the ALJ did not identify or resolve a conflict between the RFC restriction of occasional interaction with supervisors and coworkers "and the underlying definitions of unskilled work." *Plaintiff's Memorandum of Law*, ECF No. 15, p. 26. Plaintiff specifically contends that "[t]he ability to interact - at most - with co-worker and supervisors 'occasionally' dictates that for two-thirds of an 8 hour work day the Plaintiff cannot interact with coworkers or supervisors at all. Certainly the ability to interact for less than two thirds of a day is not 'a sustained basis' as required by SSR 85-15." *Id*. at 27; *see also Plaintiff's Reply Brief*, ECF No. 17, pp. 7–8. Plaintiff's argument is not well taken. This Court has previously considered and rejected a similar argument raised by Plaintiff's counsel's firm, finding that "courts routinely

find that an individual can perform unskilled work in the national economy, despite a limitation to only occasional interaction with coworkers, supervisors, and the public." *Torres v. Comm'r of Soc. Sec.*, No. CV 14-6178, 2015 WL 8328346, at *7 (D.N.J. Dec. 8, 2015) (collecting cases). This decision is consistent with the conclusions of other courts, including courts within this circuit. *See Vargas v. Saul*, No. 1:19-CV-1858, 2020 WL 2468401, at *7–8 (M.D. Pa. May 13, 2020) (noting that "courts have frequently sustained decisions like the ALJ's determination in this case, which found that a claimant could perform SVP level 2 jobs when the ALJ limited that claimant to occasional interactions with coworkers or supervisors") (collecting cases); *RE: Kathline O. v. Comm'r, Soc. Sec. Admin.*, No. CV SAG-18-3496, 2019 WL 4168961, at *5 (D. Md. Sept. 3, 2019) ("Plaintiff's argument that 'Occasional interaction with others cannot be done on a sustained basis' is logically flawed. . . . The DOT and other relevant sources clearly contemplate that some jobs require some tasks to be performed on a less-than-continuous basis, and there is no error in finding a claimant capable of an activity on an 'occasional' or 'frequent,' rather than 'constant,' basis. The overall job must be performed eight hours per day, five days per week, but each individual task need not."); *cf. Torres v. Comm'r of Soc. Sec.*, No. 15-CV-1382, 2016 WL 3911980, at *11–12 (S.D.N.Y. July 15, 2016) (noting that SSR 85-15 requires, *inter alia*, the ability (on a sustained basis) to respond appropriately to supervision and co-workers and that "[n]one of the nonexertional limits identified by the ALJ[,]" including, *inter alia*,—"no interactions with the public; occasional work-related interaction with co-workers and supervisors"—"narrows plaintiff's possible range of unskilled work so as to deprive him of meaningful employment opportunities"). Accordingly, Plaintiff has not persuaded this Court that remand is required on this basis.

### D.      Constitutionality of Appointment

Finally, Plaintiff challenges the constitutionality of the Appointment of the Acting

Commissioner, arguing that it violates the separation of powers. *Plaintiff's Memorandum of Law*,

ECF No. 15, pp. 28−30; *Plaintiff's Reply Brief*, ECF No. 17, pp. 10−29. This Court, however,

recently rejected Plaintiff's counsel's same argument in a different case, reasoning as follows:

> The Plaintiff alleges that the Social Security proceedings in their entirety were
> constitutionally defective because of the appointment of Andrew Saul as
> Commissioner of the Social Security Administration. (ECF 10 at 31). The parties
> agree that 42 U.S.C. § 902(a)(3) violates the separation of powers clause to the
> extent that it is construed as limiting the President's authority to remove the
> Commissioner without cause. (ECF 15 at 36). Plaintiff argues that because of this
> violation, the appointed ALJ and the Appeals Council did not have constitutional
> authority to render a decision on Plaintiff's case. (ECF 10 at 32).
>
> While Plaintiff argues to the contrary, the Supreme Court has already stated that
> there is no basis to conclude that an appropriately appointed official does not have
> the authority to carry out the functions of the office, even if his or her position was
> designed by Congress to impermissibly impinge on the President's right to removal
> at will. *Collins v. Yellen*, —— U.S. ——, 141 S. Ct. 1761, 1787-88, 1788 n.23, 210
> L.Ed.2d 432 (2021) (plurality opinion) ("As we have explained, there is no basis
> for concluding that any head of the FHFA lacked the authority to carry out the
> functions of his office.").
>
>> The Appointment Clause cases do not help the shareholders either. These
>> cases also ask whether an officer can lawfully exercise the statutory power
>> of his office at all in light of the rule that an office must be properly
>> appointed before he can legally act as an officer.... Here, "[a]ll the officers
>> who headed the FHFA during the time in question were properly
>> appointed." There is thus no barrier to them exercising power in the first
>> instance.
>
> *Id*. at 1793 (Thomas, J. concurring) (citations omitted).
>
> Similarly, the Court addressed that the idea that the "taint" of the "mere existence"
> of the offending removal provision flows down through the executive power
> exercised by the officer was unavailing. *Id*. at 1788, 1793 ("[W]e have not held that
> a misunderstanding about authority results in a constitutional defect where the
> action was otherwise lawful.").
>
> The plurality opinion addresses the most pressing issue: that there must be an
> adequate nexus between the unconstitutional provision and the case at bar. *See id*.

at 1779 ("for purposes of traceability, the relevant inquiry is whether the plaintiffs' injury can be traced to 'allegedly unlawful conduct' of the defendant, not to the provision of the law that is challenged."). So too do the concurring opinions of Justices Thomas and Kagan: "I write separately because I worry that the Court and the parties have glossed over a fundamental problem with removal-restriction cases such as these: The Government does not necessarily act unlawfully even if a removal restriction is unlawful in the abstract." *Id.* at 1789 (Thomas, J. concurring). Similarly, "[w]hen an agency decision would not capture a President's attention, his removal authority could not make a difference—and so no injunction should issue." *Id.* at 1802 (Kagan, J. concurring). *See also Mor v. Kijakazi*, No. 21-1730, 2022 WL 73510, at *4-5 (D.N.J. Jan. 6, 2022).

The Court must now consider, then, whether Plaintiff has sufficiently established a concrete injury inflicted by 42 U.S.C. § 902(a)(3) upon Plaintiff through the ALJ's final decision of finding the Plaintiff not disabled and the Appeals Council's denial of review. Without standing, there is no "case or controversy" to be decided. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016). Plaintiff argues that both the ALJ and the Appeals Council have inflicted the harm of unconstitutional proceedings against Plaintiff and the subsequent denial of benefits. (ECF 10 at 32).

First, the Third Circuit has already expressly stated that "[n]o statutory authority, (the source of the district court's review) authorizes [district courts] to review the Appeals Council decision to deny review," because the Appeals Council exercises "'certiorari-type jurisdiction,'" and renders an ALJ's decision final under the Social Security Act. *Kwasnik v. Kijakazi*, No. 21-08573, 2022 WL 2358424, at *10, 2022 U.S. Dist. LEXIS 116234, at * 30 (D.N.J. Jun. 30, 2022); *see also Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001). Thus, this Court does not have the authority to examine the Appeals Council's decision.

Second, the Plaintiff fails to establish a causal connection between the harm of the ALJ's decision and the impermissible removal provision. As discussed above, and as found by other courts, the mere "taint" of the head of an agency does not establish a sufficient nexus for standing. *See Kwasnik v. Kijakazi*, No. 21-08573, 2022 WL 2358424, at *——, 2022 U.S. Dist. LEXIS 116234, at *33-34 (D.N.J. Jun. 30, 2022) (citing *Andino v. Kijakazi*, No. 21-2852, 2022 WL 1135010, at *6-7 (E.D. Pa. April 18, 2022) ("Justice Alito specified in Collins that Seila Law's holding on standing 'does not mean that actions taken by such an officer are void ab initio and must be undone.' ... [I]t is not difficult to see that Collins requires Andino to demonstrate a nexus between the decision denying her disability benefits and 42 U.S.C. § 902(a)(3)."); *Mor v. Kijakazi*, No. 21-1730, 2022 WL 73510, at *5 (D.N.J. Jan. 7, 2022) ("Plaintiff fails to point to any connection between the Commissioner's removal under Section 902(a)(3) and the ALJ's decision (or any other action in this case). As a result, the requisite nexus is not met, and the Court denies Plaintiff's appeal on this ground."); *see also Ford v. Kijakazi*, No. 21-1432, 2022 WL 1203731, at *6 (E.D. Pa. Apr. 22, 2022) (denying separation of powers

claim because plaintiff failed to show "harm caused by Saul exercising authority he retained by virtue of the unconstitutional removal clause.").

As Justice Kagan noted in Collins, for the Court to redress an injury due to an agency decision made by an agency headed by a single executive subject to an impermissible for-cause removal protection, that agency's decision would need to "capture a President's attention." *Collins*, 141 S. Ct. at 1801-02. Justice Kagan specifically noted that the "mass" of Social Security Administration decisions would likely not create a harm that would allow for redress. Id. ("[O]nly when the President's inability to fire an agency head affected the complained-of decision. Only then is relief needed to restore the plaintiffs to the position they 'would have occupied in the absence' of the removal problem.").

Plaintiff points to a statement by President Biden which purports to indicate that President Biden wanted to fire Commissioner Saul. (ECF 16 at 18). Plaintiff points to the below quote in particular to demonstrate that President Biden wanted to fire the Commissioner from the time of the President's inauguration on January 20, 2021:

> Since taking office, Commissioner Saul has undermined and politicized Social Security disability benefits, terminated the agency's telework policy that was utilized by up to 25 percent of the agency's workforce, not repaired the SSA's relationships with relevant Federal employee unions including in the context of COVID-19 workplace safety planning, reduced due process protections for benefits appeals hearings, and taken other actions that run contrary to the mission of the agency and the President's policy agenda.

*Id.*

First, these harms listed in the news article quote are general and do not show the required concrete, personal, and causal harm required to establish standing. To establish standing, "a plaintiff must show that it has suffered 'an injury in fact' that is 'fairly traceable' to the defendant's conduct and would likely be 'redressed by a favorable decision.'" *Collins*, 141 S. Ct. at 1779 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). "[F]or purposes of traceability, the relevant inquiry is whether the plaintiffs' injury can be traced to 'allegedly unlawful conduct' of the defendant, not to the provision of law that is challenged." *Id.* (quoting *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)); *see also Kwasnik v. Kijakazi*, No. 21-08537, 2022 WL 2358424, at *11 (D.N.J. Jun. 30, 2022).

Plaintiff does not point to a specific legal application, policy, or decision that the ALJ or Appeals Council rendered that had any effect on this case except for the overall denial of benefits, which as explained above was sufficiently supported by the record. *See Johnson v. Kijakazi*, No. 21-2372, 2022 WL 2342569 at *13, 2022 U.S. Dist. LEXIS 114766 at *36 (E.D. Pa. Jun. 28, 2022) ("Plaintiff has not

identified any new regulations, agency policies or directives Commissioner Saul installed that may have affected her claims. Plaintiff thus fails to show how or why [the unlawful] removal clause possibly harmed her.") (internal citations omitted). The unconstitutionally of 42 U.S.C. § 902(a)(3)'s removal restriction simply does not void the ALJ's decision in this mine-run case. The adjudication process and determination by the Social Security Administration remains valid.

*John G. v. Comm'r of Soc. Sec.*, No. 1:21-CV-17256-NLH, 2022 WL 3678108, at *10–12

(D.N.J. Aug. 25, 2022). This decision is consistent with this Court's decisions in other cases

considering similar challenges to the constitutionality of the appointment of the Acting

Commissioner. *See Sheree J. v. Kijakazi*, No. 1:21-CV-05477-NLH, 2022 WL 3211415, at *8–

11 (D.N.J. Aug. 9, 2022) (same); *Rebecca L. v. Comm'r of Soc. Sec.*, No. 1:21-CV-13848, 2022

WL 3025908, at *13–14 (D.N.J. July 31, 2022) ("Accordingly, Plaintiff has not alleged any

connection between the unconstitutional removal provision in § 902(a)(3) and the ALJ's decision

denying Plaintiff benefits, and nothing commands us to vacate the decisions below on that

ground. . . . Thus, while the removal clause in § 902(a)(3) violates the separation of powers, it

does not independently require the Court to remand or reverse the ALJ's decision absent a

showing of compensable harm.") (internal quotation marks and citations omitted); *Daniel M. v.

Comm'r of Soc. Sec.*, No. CV 21-10533 (RMB), 2022 WL 2952912, at *5–7 (D.N.J. July 26,

2022) ("Plaintiff has failed to show a sufficient nexus between the unconstitutional removal

restriction and the ALJ's decision.") (internal quotation marks and citations omitted); *Margaret

S. v. Kijakazi*, No. CV 21-13556 (SDW), 2022 WL 2753475, at *8–9 (D.N.J. July 14, 2022)

("Plaintiff has offered no evidence demonstrating that 42 U.S.C. § 902(a)(3)'s removal

restriction caused the denial of her benefits claim or affected the determination of her benefits in

any way. . . . As such, further consideration from this Court on Plaintiff's 'separation of powers'

argument is not necessary. Accordingly, the final decision of the ALJ is not constitutionally

defective and remand is not warranted."); *Kwasnik v. Kijakazi*, No. 3:21-CV-08573, 2022 WL

2358424, at *8–11 (D.N.J. June 30, 2022) ("Plaintiff has failed to show a sufficient nexus between the unconstitutional removal restriction and the ALJ's decision."); *Mor v. Kijakazi*, No. CV 21-1730 (JMV), 2022 WL 73510, at *3–5 (D.N.J. Jan. 7, 2022) ("Plaintiff fails to point to any connection between the Commissioner's removal under Section 902(a)(3) and the ALJ's decision (or any other action in this case.")). Nothing in Plaintiff's briefing in the instant case persuades this Court that the reasoning in these cases was erroneous. The Court therefore adopts that reasoning and concludes that Plaintiff has not established that remand is appropriate on this basis.

## V.    CONCLUSION

For all these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date:  October 14, 2022                          *s/Norah McCann King*
                                          NORAH McCANN KING
                                          UNITED STATES MAGISTRATE JUDGE